IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| OTeX RESOURCES, LLC | § | CASE NO. 17-80033 |
| | § | (Chapter 11) |
| | § | |
| DEBTOR | § | |

**MOTION REQUESTING AUTHORIZATION AND APPROVING
THE SALE OF ASSETS SUBJECT TO LIENS HELD BY DEBTOR IN POSSESSION
FINANCING LENDER AND SECURED CREDITOR AT A SALE IN ACCORDANCE
WITH TEXAS PROPERTY CODE SECTION 51**
[Related to Doc. #____]

*************************************************************************

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON _____, 2017, AT __:_0_ _M, IN COURTROOM 404, 4TH FLOOR, 515 RUSK STREET, HOUSTON, TEXAS**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-ONE (21) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

1

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.**
*******************************************************************************

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

Solstice Capital, LLC ("Lender" or "Solstice" or "DIP Lender"), Debtor in Possession Financer and Pre-Petition Secured Creditor in this case move this Court to enter an order pursuant to 11 U.S.C. §§105 and 365 and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure, (a) approving the Creditor's motion to proceed with the sale in accordance with the Texas Property Code Section 51[1] and (b) granting all related relief (the "Sale Motion") the Creditor may be entitled to receive. In support of the Sale Motion, the Debtor respectfully state as follows:

### I.  SUMMARY

1. The above captioned Chapter 11 bankruptcy case was filed on January 31, 2017 (Doc. #1) under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101 et sq. OTeX Resources, LLC, (the "Debtor") continues to manage its respective property as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

2. The Debtor has failed to find any buyers for the business as a going concern. The Debtor has failed to make any of the necessary payments and improvements required by the Railroad Commission of Texas to be reinstated and receive the necessary permits, licenses, and insurance to restart operation of the Debtor's oil and gas wells. The Debtor has failed make any payments to the DIP Lender. The Debtor has failed to any monthly operating reports for any month since the Debtor's Chapter 11 Petition filing date.

---

[1] All capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed in the Asset Purchase Agreement.

2

3. The Creditor believes that the request for the approval of the sale allowed under the Texas Property Code Section 51[2] (the "Sale") will provide the adequate and necessary

---

[2] Texas Property Code Section 51.002 Sale of Real Property Under Contract Lien. (a)  A sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month.  Except as provided by Subsection (h), the sale must take place at the county courthouse in the county in which the land is located, or if the property is located in more than one county, the sale may be made at the courthouse in any county in which the property is located.  The commissioners court shall designate the area at the courthouse where the sales are to take place and shall record the designation in the real property records of the county.  The sale must occur in the designated area.  If no area is designated by the commissioners court, the notice of sale must designate the area where the sale covered by that notice is to take place, and the sale must occur in that area.
(b)  Except as provided by Subsection (b-1), notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:
   (1)  posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;
   (2)  filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and
   (3)  serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.
(b-1)  If the courthouse or county clerk's office is closed because of inclement weather, natural disaster, or other act of God, a notice required to be posted at the courthouse under Subsection (b)(1) or filed with the county clerk under Subsection (b)(2) may be posted or filed, as appropriate, up to 48 hours after the courthouse or county clerk's office reopens for business, as applicable.
(c)  The sale must begin at the time stated in the notice of sale or not later than three hours after that time.
(d)  Notwithstanding any agreement to the contrary, the mortgage servicer of the debt shall serve a debtor in default under a deed of trust or other contract lien on real property used as the debtor's residence with written notice by certified mail stating that the debtor is in default under the deed of trust or other contract lien and giving the debtor at least 20 days to cure the default before notice of sale can be given under Subsection (b).  The entire calendar day on which the notice required by this subsection is given, regardless of the time of day at which the notice is given, is included in computing the 20-day notice period required by this subsection, and the entire calendar day on which notice of sale is given under Subsection (b) is excluded in computing the 20-day notice period.
(e)  Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.
(f)  Each county clerk shall keep all notices filed under Subdivision (2) of Subsection (b) in a convenient file that is available to the public for examination during normal business hours.  The clerk may dispose of the notices after the date of sale specified in the notice has passed.  The clerk shall receive a fee of $2 for each notice filed.
(f-1)  If a county maintains an Internet website, the county must post a notice of sale filed with the county clerk under Subsection (b)(2) on the website on a page that is publicly available for viewing without charge or registration.
(g)  The entire calendar day on which the notice of sale is given, regardless of the time of day at which the notice is given, is included in computing the 21-day notice period required by Subsection (b), and the entire calendar day of the foreclosure sale is excluded.
(h)  For the purposes of Subsection (a), the commissioners court of a county may designate an area other than an area at the county courthouse where public sales of real property under this section will take place that is in a public place within a reasonable proximity of the county courthouse as determined by the commissioners court and in a location as accessible to the public as the courthouse door. The commissioners court shall record that designation in the real property records of the county. A designation by a commissioners court under this section is not a ground for challenging or invalidating any sale. A sale must be held at an area designated under this subsection if the sale is held on or after the 90th day after the date the designation is recorded.  The posting of the notice required by Subsection (b)(1) of a sale designated under this subsection to take place at an area other than an area of the courthouse remains at the courthouse door of the appropriate county.

protection for the Creditor. The property subject to the Sale is listed on Exhibit "1" and is the oil and gas leases and wells that are subject to the lien in accordance with the DIP Loan.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction by virtue of 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(N)[3].

5. Venue is proper in this district pursuant to 28 U.S.C. § 1408(1) and (2) because Debtor's principal assets are in this district for more than 180 days preceding the filing of these bankruptcy cases.

6. The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363 and 365 of title 11 of the United States Code and Rules 2002, 6004, 6006, 9007 and 9014 of the Federal Rules of Bankruptcy Procedure.

## III. BACKGROUND INFORMATION

7. The above captioned Chapter 11 bankruptcy case was filed on January 31, 2017 under Chapter 11 of Title 11 of the Bankruptcy Code, 11 U.S.C. §§101 et sq. The Debtor continues to manage its respective property as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

8. Prior to filing, Debtor had secured loans in multiple stages from Creditor. Creditor filed its proof of claim, on or about February 13, 2017 (Claim #3-1), evidencing Creditor's secured claim.

---

(i) Notice served on a debtor under this section must state the name and address of the sender of the notice and contain, in addition to any other statements required under this section, a statement that is conspicuous, printed in boldface or underlined type, and substantially similar to the following: "Assert and protect your rights as a member of the armed forces of the United States. If you are or your spouse is serving on active military duty, including active military duty as a member of the Texas National Guard or the National Guard of another state or as a member of a reserve component of the armed forces of the United States, please send written notice of the active duty military service to the sender of this notice immediately."

[3] 28 USC § 157 (b)(2)(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

4

9. The Debtor was negatively impacted by the decline in oil prices, which affecting the entire oil industry. This decrease in sales and liquidity caused the Debtor to default on obligations and resulted in the subsequent bankruptcy filing.

10. A real property asset of the Debtor is commonly referred to as the "Lost Lake Field" in Chambers County, Texas was unable to produce any oil for months because of flooding in 2015 and 2016 that impacted the field and the Debtor's ability to produce oil at the "Lost Lake Field."[4] The Trinity River crested at record levels leaving the wells and surface equipment inundated severely impacting Debtor's cash flow.

11. After filing for protection under Chapter 11, Debtor encountered several obstacles to the Debtor's ability to restart production of the Debtor's oil production. The Creditor is extremely concerned that the Debtor's viability is in question and the Debtor's value continues to rapidly depreciate with each day that passes the Debtor is unable to acquire insurance and the necessary production permits and licenses.

12. On February 13, 2017, the Court approved the Debtor's agreement with Creditor to be the Debtor-in-possession ("DIP") Lender for the purpose of providing the Debtor with a capital infusion to enable the Debtor to continue or restart operations in order to demonstrate the viability of the Debtor for a potential sale of the Debtor and substantially all of the Debtor's assets. The Court's authorized two orders regarding Debtor in possession financing: (1) "Agreed Interim Order Authorizing Debtor-In-Possession to Obtain Post-Petition Financing, Grant Security Interests and Accord Super Administrative Priority Status Pursuant to 11 U.S.C. §364 and Giving Notice of Final Hearing Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2)" ("70K DIP Order") (Doc. #20), and (2) "Agreed FINAL Order Authorizing Debtor-In-Possession to Obtain Post-Petition Financing, Grant Security Interests and Accord Super Administrative

---

[4] See Exhibit "1" for real property located in Chambers County, Texas.

Priority Status Pursuant to 11 U.S.C. §364 and Giving Notice of Final Hearing Pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2)" ("30K DIP Order") (Doc. #24). The 70K DIP Order ordered, "ORDERED that as additional security for the Post-Petition DIP Financing Solstice Capital, LLC shall be granted a lien on the O&G Leases and the Vehicles. Such liens shall be subject to any valid enforcement pre-petition lien properly filed of record on or before January 31, 2017. Initially, the Court allowed for $70,000.00 of DIP financing and then the Court later approved an additional $30,000.00 of DIP financing from DIP Lender to the Debtor.

13. The Debtor was given funds as part of the Debtor-in-possession financing ("DIP Loan") for the Debtor purchase insurance, pay the necessary fees to the TX RR to be allowed to restart production, and the Debtor has been unable begin production again. The Debtor has continued to be unable to provide adequate and necessary protection to the Creditor.

14. The Debtor has not found any buyers for the business as a going concern. As of the date of this Sale Motion, the Debtor has yet to develop or present a viable business plan that would allow the Debtor to continue to operate and also while operating begin to start to produce revenue. The Debtor has failed to reacquire the necessary licenses from the Railroad Commission of Texas ("TX RR") after the Debtor fell into noncompliance under the TX RR's regulatory requirements. The Debtor has failed to conceive a plan that would allow the Debtor to reacquire the necessary licenses from the TX RR to begin producing oil again and as the Debtor's primary business is the production of oil and those licenses from the TX RR are a necessary part of the Debtor's business this is extremely concerning to the Creditor.

15. The Debtor has continued to struggle due the Debtor's inability of acquiring the proper licenses and permits and insurance and thus preventing the Debtor from being able to restart oil production. The Debtor has specifically failed to obtain a P-4, Producer's

Transportation Authority and Certificate of Compliance from the Railroad Commission of Texas. The Debtor has also been unable to obtain and secure adequate insurance coverage to be in compliance with the requirements of the United States Trustee office. The Debtor has failed to make any payments in accordance with the terms of the DIP Loan to the Creditor.

16. When considering these difficulties the Debtor is facing it is in the best interest of the Creditors to provide the Creditors with adequate protection to allow the Creditor to pursue and follow through on the sale as approved by the Texas Property Code Section 51.002.

17. In preparation and in accordance with the February 13, 2017 Hearing audio transcript, the following is paraphrased from the digital recording received from the Court's Clerk from approximately 2:44:00pm time stamp until 2:51:30pm time stamp. The Court would not agree to sign a DIP Loan Order for the entire $100,000.00 until after the challenge period had lapsed. The Court also noted at this point in a case the Court would never approve a creditor's ability to take property of a debtor in default without the Court's permission to take the property. The Court explained to the Creditor's counsel that the Creditor would be allowed to send the Debtor a notice of default and post the property for foreclosure, but the Creditor could not take the property without the Court's approval. The Creditor has exercised the Creditor's rights to post and provide notice that the Creditor will be conducting a sale, in accordance with the Texas Property Code Section 51.002, of the real property in which the Creditor received liens for in exchange for making the debtor-in-possession financing for the Debtor.

18. Through this Sale Motion Debtor seeks to sell substantially all its marketable assets (the "Purchased Assets"), including equipment and rights to unexpired leases.

19. The Sale will also result in the immediate reduction of post-petition claims against the Debtor.

20. Debtor has no other relationship with Solstice Capital other than as a prepetition secured creditor and DIP Lender. The principal member of Solstice Capital is Erich Mundinger.

## IV.     REQUESTED RELIEF

21. By this Motion, pursuant to sections 105, and 363(f) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004, Creditor seeks:

   a. authorization of the sale in accordance with the procedures and requirements of the Texas Property Code Section 51;
   b. waiver any 14-day stay imposed by Bankruptcy Rules 6004 and 6006; and
   c. such other and further relief as is just and proper.

## V.     NOTICE

22. Actual written notice of the Sale Motion was provided to the following parties (the "**Notice Parties**"): (i) the United States Trustee for the Southern District of Texas; (ii) the collective list of top twenty unsecured creditors in these cases; (iii) counsel to the Debtor; (iv) all persons or entities holding liens on any of the Purchased Assets; (v) any counter-party to an executory contract or unexpired lease; (vi) the Internal Revenue Service; and (vii) all persons or entities filing a notice of appearance or request for notice of the proceedings in these chapter 11 cases.

[Rest of Page Intentionally Left Blank]

Respectfully submitted,
Harold "Hap" May, PC

By: */s/ Harold N. May*_____
Harold N. May
SBN 13264800
Two Riverway, 15th Floor
Houston, Texas 77056
Telephone: (281) 407-5609
Fax: (832) 201-7675

COUNSEL FOR
SOLSTICE CAPITAL, LLC, CREDITOR

[Motion for Order Authorizing and Approving the Sale of Assets subject to liens held by Debtor In Possession Financing Lender and Secured Creditor at Sale in accordance with Texas Property Code Section 51 – Filed by Solstice Capital, LLC, Creditor in Case No. 17-8003]

**Exhibit "1"**
**Oil and Gas Leases & Wells**

**Leases.**

Oil, Gas and Mineral Lease dated July 23, 1982, from Rivers Reaves, Lessor, to Viking Petroleum, Inc., Lessee, recorded in Volume 514, at Page 231 of the Official Public Records, Chambers County, Texas;

Oil, Gas and Mineral Lease dated August 9, 1982, from Estate of George Clinton Mayes, Jr. and others, Lessor, to Viking Petroleum, Inc., Lessee, recorded by counterpart memorandums in Volume 511, at Page 195, Volume 511, at Page 207, and Volume 518, at Page 443 of the Official Public Records, Chambers County, Texas;

Oil, Gas and Mineral Lease dated August 9, 1982, from Estate of David Mayes Middleton, Lessor, to Viking Petroleum, Inc., Lessee, recorded in Volume 522, at Page 160 of the Official Public Records, Chambers County, Texas;

Oil, Gas and Mineral Lease dated January 27, 1981, from Exxon Corporation, Lessor, to Viking Petroleum, Inc., Lessee, recorded in Volume 549, at Page 453 of the Official Public Records, Chambers County, Texas;

Oil, Gas and Mineral Lease dated January 7, 1981, from Exxon Corporation, Lessor, to Viking Petroleum, Inc., Lessee, recorded in Volume 549, at Page 467 of the Official Public Records, Chambers County, Texas;

Oil, Gas and Mineral Lease dated December 1, 1982, from Bureau of Land Management #NM-A 55024, Lessor, to Business Mens Assurance Company, Lessee, recorded in Volume 536, at Page 640 of the Official Public Records, Chambers County, Texas;

Oil, Gas and Mineral Lease dated August 25, 1916, from Henry Busch and John C. Williams, Lessor, to C.T. Rucker, Lessee, recorded in Volume 43, at Page 473 of the Contract Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated August 30, 1916, from H.E. Kahn, Lessor, to R.L. Blaffer, Lessee, recorded in Volume 43, at Page 503 of the Contract Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated February 21, 1940, from Gulf Oil Corporation, Lessor, to Grace Oil Company, Lessee, recorded in Volume 43, at Page 503 of the Contract Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated May 22, 1940, from Gulf Oil Corporation, Lessor, to Newton and Lillie, Lessee, recorded in Volume 360, at Page 94 of the Contract Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated April 5, 1940, from Claudie O. Busch and others, Lessor, to Newton and Lillie, Lessee, recorded in Volume 359, at Page 419 of the Contract Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated March 22, 1999, from Harper Trusts and others, Lessor, to Union Crude Co., Lessee, recorded in Volume 1163, at Page 257 of the Deed Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated March 22, 1999, from Betty Ann Opryshek, Lessor, to Union Crude Co., Lessee, recorded in Volume 25, at Page 37 of the Deed Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated March 22, 1999, from Leroy B. Walker, Lessor, to Union Crude Co., Lessee, recorded in Volume 25, at Page 37 of the Deed Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated March 1, 1999, from Erika Wann, Lessor, to Union Crude Co., Lessee, recorded under Instrument Number 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 of the Official Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated October 25, 2002, from Ruby Murl Gamble, Lessor, to OTeX Resources LLC Lessee, recorded under Instrument Number 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 of the Official Public Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated October 25, 2002, from Doyle E. Thomas, Jr., Lessor, to OTeX Resources LLC Lessee, recorded under Instrument Number 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 of the Official Public Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated October 25, 2002, from Adrian Busch Estate., Lessor, to OTeX Resources LLC Lessee, recorded under Instrument Number 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 of the Official Public Records, Harris County, Texas;

Oil, Gas and Mineral Lease dated October 25, 2002, Patricia Busch, Lessor, to OTeX Resources LLC Lessee, recorded under Instrument Number 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 of the Official Public Records, Harris County, Texas;

Quit Claim Deed dated January 3, 2005, from Union Crude Company to OTeX Resources LLC, recorded under Instrument Number 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 of the Official Public Records, Harris County, Texas;

Quit Claim Deed dated January 7, 2005, from Union Crude Company to OTeX Resources LLC, recorded under Instrument Number 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 of the Official Public Records, Harris County, Texas.

**Wells.**

| | |
|---|---|
| H. Busch #1B | Mayes "A" #4 |
| H. Busch #2B | Mayes "A" #7 |
| H. Busch #3B | Mayes "A" #10 |
| H. Busch #4B | Mayes "A" #11 |
| H. Busch #5B | Mayes "A" #12 |
| H. Busch #6B | Mayes "A" #14 |
| H. Busch #7B | Mayes "A" #15 |
| H. Busch #8B | Mayes "A" #16 |
| H. Busch #9B | Mayes "A" #17 |
| H. Busch #10B | Mayes "A" #23 |
| H. Busch #11B | Mayes "A" #24 |
| H. Busch, et al. "A" #1 | Mayes "A" #25 |
| H. Busch, et al. "A" #3 | Mayes "A" #26 |
| H. Busch, et al. "A" #4 | Mayes "A" #27 |
| Busch Enderli #1 | Mayes "A" #28 |
| Busch Enderli #2 | Mayes "A" #29 |
| Busch Shelton "A" #1 | Mayes "A" #30 |
| Busch Shelton "B" #2 | Mayes "A" #31 |
| Busch Shelton "C" #1 | Mayes "A" #33 |
| Busch Shelton "D" #1 | Mayes "A" #39 |
| Busch Shelton "E" #1 | Mayes "A" #42 |
| CRH Corp #1 | Charles H. Shelton Fee #1 |
| Federal Lost Lake "E" #4 | Charles H. Shelton Fee #2 |
| Federal Lost Lake "K" #1 | Charles H. Shelton Fee #4 |
| Federal Lost Lake "N" #1 | Charles M. Shelton Fee #4 |
| Federal Lost Lake "Q" #1 | Charles M. Shelton Fee #5 |
| Federal Lost Lake "R" #1 | Charles M. Shelton Fee #6 |
| Humble Oil & Refining Company #1 | Charles M. Shelton Fee #8 |
| W.L. Jones #1 | Walker, et al. Unit #1 |
| K.S. Jones #1 | Wright-Zeagler Unit #1T |